IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2024

**STATE OF TENNESSEE v. DESTINY DIAMOND BAXTER AND
ANTHONY WAYNE SHEFFIELD**

**Appeal from the Circuit Court for Maury County**
**No. 2022-CR-29994        Christopher V. Sockwell, Judge**

———————————————————————

**No. M2023-01507-CCA-R3-CD**

———————————————————————

A Maury County jury convicted Destiny Diamond Baxter and Anthony Wayne Sheffield of first degree premeditated murder, attempted first degree murder, especially aggravated robbery, two counts of felony murder, and abuse of a corpse. Defendant Sheffield was also convicted of possessing a firearm with a prior conviction for a crime of violence and employing a firearm during the commission of a dangerous felony. The jury determined that both Defendants should serve life in prison without the possibility of parole for the homicide offenses. As for the remaining convictions, the trial court sentenced Defendant Baxter to an additional twenty-two years and sentenced Defendant Sheffield to a further thirty-five years. On appeal, both Defendants challenge whether the evidence is legally sufficient to support their convictions. Defendant Sheffield also argues that the trial court erred in denying his motion to sever the Defendants' cases and admitting photographs of the homicide victim into evidence during the jury's sentencing phase. Further, Defendant Sheffield argues that the trial court improperly sentenced him for the other convictions by failing to consider the risk and needs assessment, miscalculating the range, and imposing consecutive sentences beyond his life term. Upon our review, we conclude that a harmless error exists in failing to issue a limiting instruction as requested by Defendant Sheffield, and we also remand the judgments for correction of clerical errors. However, we respectfully affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed; Cases Remanded**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and KYLE A. HIXSON, JJ., joined.

Ronald G. Freemon, Columbia, Tennessee, for the appellant, Destiny Diamond Baxter.

William C. Barnes, Jr., Columbia, Tennessee, for the appellant, Anthony Wayne Sheffield.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Brent Cooper, District Attorney General; and Pamela S. Anderson and Jonathan Davis, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

### A.  THE MURDER OF MR. HARLAN AND ATTEMPTED MURDER OF MR. WHITAKER

On August 14, 2020, Defendant Baxter contacted Christopher "Chevy" Whitaker and asked for $60 worth of crack cocaine. Mr. Whitaker obtained the cocaine and met with Defendant Baxter at an apartment complex in Mount Pleasant, Tennessee. When they arrived, Defendant Baxter approached Mr. Whitaker in his vehicle, a white Toyota Camry. Defendant Baxter told Mr. Whitaker that she did not yet have the money but asked for a small piece of crack cocaine, which Mr. Whitaker gave to her. Mr. Whitaker told Defendant Baxter to contact him when she received the money, and he left the apartment complex.

Mr. Whitaker proceeded to pick up his father, Valton Harlan. When they stopped at a gas station, Defendant Baxter called to inform Mr. Whitaker that she now had the money. Mr. Whitaker and his father then drove to America's Best Value Inn to meet her. They arrived about 8:40 p.m., and Mr. Whitaker observed a maroon Buick Rendezvous parked on the side of the road with Defendant Baxter in the passenger seat and Defendant Sheffield in the driver's seat.[1] Neither Mr. Whitaker nor his father were armed at the time.

Defendant Baxter again claimed that she did not have the money. As Mr. Whitaker began to drive away, Defendant Baxter called him and told him to return because Mr. Sheffield was "going to cover it." Mr. Whitaker repositioned his car next to the Rendezvous so that both vehicles were pointed in the same direction. Defendant Baxter exited the Rendezvous and attempted to enter Mr. Whitaker's backseat, but the doors were locked. She then moved to his driver's side window. While Mr. Whitaker was focused on

---

[1]     During the trial, the State presented proof that the Buick Rendezvous was registered to Defendant Sheffield.

her, he heard his father utter, "Aw, Bro," followed by gunshots from the passenger side of his car. Later at trial, Mr. Whitaker testified that Defendant Baxter was not armed, and he identified Defendant Sheffield as the shooter.

Mr. Whitaker immediately attempted to flee but was shot four times, including in his right ear. He called out to his father but received no response. Mr. Whitaker momentarily lost consciousness and awoke to someone reaching over him, attempting to access his pockets and open the door. When he tried to drive away again, Defendant Sheffield struck him in the face, head, and jaw with a pistol, resulting in a fractured jaw.

Despite his injuries, Mr. Whitaker managed to drive to a friend's apartment, where he left his car running and went inside. As he entered, he saw the maroon Buick Rendezvous following him, and he told his friend that his father was dead. Officers from the Mount Pleasant Police Department arrived at the residence at approximately 9:50 p.m. and found Mr. Whitaker covered in blood on the entryway floor. As he was being taken to the ambulance, Mr. Whitaker noticed his car was no longer where he had left it.

Mr. Whitaker was then transported to Vanderbilt Medical Center. Before going into surgery, Mr. Whitaker told a Maury County Sheriff's Department deputy about Defendant Baxter and where he had last seen her.

## B.    LAW ENFORCEMENT INVESTIGATION

At about 10:30 that same night, Mr. Whitaker's car was discovered on fire at a local cemetery about fifteen miles away. After putting out the flames, firefighters removed a body that was unrecognizable due to the damage from the fire. During a search of the scene, officers located two spent bullet casings, one inside the vehicle and one outside, and a red gas can that had melted into the floorboard. Officers later discovered a cigarette lighter and a gasoline "pour" mark and concluded that the fire had been intentionally started.

Officers went to the scene of the shooting and discovered a slide sandal that was black with white stripes. They also found a severely damaged cell phone off the roadway. The investigation revealed that the cell phone belonged to Defendant Sheffield.

Additionally, officers obtained several surveillance videos that corroborated the events as described above. Specifically, surveillance videos from a power substation showed the shooting from a distance. Surveillance footage from a gas station that same

3

evening showed Defendant Baxter driving Defendant Sheffield's Buick Rendezvous, buying a red gas can, filling it with gasoline, and driving away. And a surveillance video from a mechanic shop showed Defendant Baxter returning to the scene of the shooting the next morning and looking for items on the ground.

Officers obtained search warrants for the Buick Rendezvous and Defendant Baxter's residence. Inside the car, officers recovered a black and white slide sandal for a right foot that matched the one officers had located from the scene of the shooting. Additionally, several items in the vehicle belonged to Defendant Sheffield, including his driver's license. Officers also discovered blood stains on the front passenger seat and the rear driver's seat. Inside a black purse, officers found three 9mm rounds.

Inside Defendant Baxter's residence, officers located a 9mm purple and black pistol and two 9mm bullets. Mr. Whitaker testified that Defendant Baxter had shown him this distinctive gun a few days before the offense.

### C.    TRIAL, SENTENCING, AND APPEAL

On October 20, 2022, a Maury County grand jury charged the Defendants with first degree premeditated murder, attempted first degree murder, especially aggravated robbery, two counts of felony murder, and abuse of a corpse. It also charged Defendant Sheffield with unlawfully possessing a firearm after having been convicted of a felony crime of violence and employing a firearm during the commission of a dangerous offense. The State filed a notice seeking imprisonment for life without the possibility of parole for each Defendant.

The trial began on May 22, 2023, and Mr. Whitaker and several officers testified to the facts described above. In addition, Special Agent Carrie Schmittgen with the Tennessee Bureau of Investigation (TBI) testified that she had tested DNA and blood swabs collected from various scenes. She excluded Defendant Sheffield as a contributor from the sample on the handgun from Defendant Baxter's residence. However, she testified that Mr. Whitaker's DNA was consistent with that found in the blood on the handgun and in the Buick Rendezvous.

TBI Special Agent Denver Hall also testified. He compared the shell casing found in Mr. Whitaker's car and determined that the handgun recovered from Defendant Baxter's residence had fired the casing. Additionally, Agent Hall concluded that a bullet found in the car matched the handgun.

4

The State also called Kristi Black, who testified that she knew Defendant Baxter and had received multiple letters from her. The letters contained confessions from Defendant Baxter, claiming that she saved the victim's family money for funeral expenses because she burned the victim. Defendant Baxter also wrote details about how the victim's body was positioned in the car, where she poured gasoline, how she lit the fire, what the explosion of the car looked like, how she had planned to kill both victims, and how she has "never left a loose end."

Finally, Dr. Thomas Deering, who was formerly the Medical Examiner for Tennessee, testified that Mr. Harlan's body was so severely burned that it was "nearly cremated" in certain areas. His medical opinion was that Mr. Harlan was dead before his body was burned. Due to the condition of Mr. Harlan's body, Dr. Deering was unable to determine whether Mr. Harlan had been shot. Nevertheless, based upon his understanding of the investigation, Dr. Deering opined that "[t]he best cause of death in my opinion is, therefore, probable gunshot wound to the head. The manner of death is homicide."

Following the close of proof, the jury convicted both Defendants of first degree premeditated murder, attempted first degree murder, especially aggravated robbery, two counts of felony murder, and abuse of a corpse. Additionally, Defendant Sheffield was convicted of being a felon in possession of a firearm and employing a firearm during the commission of a dangerous felony. After a separate sentencing phase of the trial for the first degree murder convictions, the jury determined that both Defendants should be sentenced to life imprisonment without the possibility of parole.

As to the remaining convictions, the trial court held a sentencing hearing on August 31, 2023. For each Defendant, the court merged the felony murder convictions into the conviction for first degree premeditated murder. It sentenced Defendant Sheffield to thirty-five years for the attempted first degree murder conviction, thirty-five years for the especially aggravated robbery conviction, three years for the abuse of a corpse conviction, twenty years for the felon in possession of a weapon conviction, and ten years for employing a firearm during the commission of a dangerous felony. Aligning these sentences concurrently with each other, but consecutively to the jury's sentence, the trial court imposed an effective sentence of life without the possibility of parole plus thirty-five years.

The court sentenced Defendant Baxter to twenty years for the attempted first degree murder conviction, twenty years for the especially aggravated robbery conviction, and two years for the abuse of a corpse conviction. Ordering partially consecutive sentences, the

trial court imposed an effective sentence of life without the possibility of parole plus twenty-two years.

Both Defendants filed timely motions for a new trial, which the trial court denied on October 23, 2023. Defendant Baxter filed a timely notice of appeal seven days later. However, Defendant Sheffield filed an untimely notice of appeal on December 6, 2023. This court waived the requirement of a timely filed notice of appeal and consolidated these cases for all purposes on appeal.

## ANALYSIS

In this consolidated appeal, both Defendants challenge the legal sufficiency of the evidence supporting their various convictions. Defendant Sheffield also raises several other issues relating to his trial and sentence. As such, we will first address the Defendants' joint issues and then consider the issues raised only by Defendant Sheffield.

## I. LEGAL SUFFICIENCY OF THE EVIDENCE

Defendant Baxter and Defendant Sheffield were both convicted of first degree premeditated murder, attempted first degree murder, especially aggravated robbery, and two counts of felony murder. Both Defendants were also convicted of abuse of a corpse, though only Defendant Sheffield challenges this conviction on appeal. Additionally, Defendant Sheffield was separately convicted of possession of a firearm by a convicted felon and employing a firearm during the commission of a dangerous felony.

Importantly, Defendant Sheffield does not challenge any particular element of his conviction offenses or raise any specific argument as to how the evidence is legally insufficient with respect to any conviction. For her part, Defendant Baxter also does not challenge any element of any conviction offense, but she asserts that she cannot be held criminally responsible for Defendant Sheffield's crimes. In response, the State argues that the evidence is sufficient to support each of the convictions, though it also observes the absence of specific arguments by Defendant Sheffield. Nevertheless, despite the arguable deficiencies in the Defendants' arguments, we agree with the State that the evidence is legally sufficient to support the convictions for each Defendant.

6

## A. STANDARD OF APPELLATE REVIEW

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, "[w]hen making that determination, the prosecution is afforded the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citation and internal quotation marks omitted). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citation and internal quotation marks omitted).

## B. FIRST DEGREE PREMEDITATED MURDER OF MR. HARLAN

Count 1 of the indictment charged each Defendant with the first degree premeditated murder of Mr. Harlan. As charged in this case, first degree premeditated murder is "[a] premeditated and intentional killing of another[.]" Tenn. Code Ann. § 39-13-202(a)(1) (2018). A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Id.* § 39-11-302(a) (2018). Our General Assembly has defined "premeditation" as being

> an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

7

Tenn. Code Ann. § 39-13-202(d) (subsequently redesignated).  Like any other element of an offense, "the State must prove premeditation beyond a reasonable doubt."  *Miller*, 638 S.W.3d at 159.

The question of "[w]hether premeditation is present in a given case is a question of fact to be determined by the jury from all of the circumstances surrounding the killing." *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003).  As our supreme court has observed,

> Several factors are considered to infer premeditation: the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, declarations by the defendant of an intent to kill, evidence of procurement of a weapon, preparations before the killing for concealment of the crime, and calmness immediately after the killing.  Additional considerations include a lack of provocation on the victim's part and a defendant's failure to render aid to a victim.

*State v. Clayton*, 535 S.W.3d 829, 845 (Tenn. 2017) (internal citations omitted).  "[I]n determining the existence of premeditation, the trier of fact 'may not engage in speculation.'"  *Reynolds*, 635 S.W.3d at 918 (quoting *State v. Jackson*, 173 S.W.3d 401, 408 (Tenn. 2005)).  That said, "Tennessee cases have long recognized that premeditation may be proved by circumstantial evidence" because "premeditation involves the defendant's state of mind, concerning which there is often no direct evidence."  *Davidson*, 121 S.W.3d at 614-15.

In addition, a person may be held criminally responsible as a party to an offense "if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both."  Tenn. Code Ann. § 39-11-401 (2018). Our supreme court has recognized that "criminal responsibility is not a separate, distinct crime.  It is solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person."  *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999).  As charged in this case, a person may be criminally responsible for an offense committed by another person, if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]"  Tenn. Code Ann. § 39-11-402(2) (2018).  Under this particular theory of criminal responsibility, "the evidence must establish that a defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted or assisted its commission."  *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (citations omitted).  In this regard, "the State must prove both that the defendant's intent *and* his or her conduct come within the language

8

of the statute itself." *State v. Jenkins*, No. M2022-00693-CCA-R3-CD, 2023 WL 5813706, at *6 (Tenn. Crim. App. Sept. 8, 2023) (emphasis in original), *no perm. app. filed.*

Neither Defendant challenges any specific element of this crime, including that Mr. Harlan died from a gunshot wound. As such, viewing the evidence in the light most favorable to the State, a rational juror could infer that Defendant Sheffield shot Mr. Harlan multiple times from close range with the black and purple handgun belonging to Defendant Baxter. Mr. Whitaker testified that he heard gunshots coming from the passenger side of his car and then saw Defendant Sheffield there. He also identified Defendant Sheffield as the shooter in the surveillance video taken from a power substation. Further, Defendant Sheffield's cell phone was later discovered at the shooting scene by law enforcement. Mr. Harlan, who was unarmed at the time, did not provoke the attack, and Defendant Sheffield did not attempt to render aid. As we discuss in more detail below, a rational juror could find that Defendant Sheffield also assisted Defendant Baxter in concealing evidence of the murder by setting fire to the victim's body and Mr. Whitaker's car. As such, a rational juror could have found that Defendant Sheffield killed Mr. Harlan intentionally and with premeditation.

Defendant Baxter also does not challenge any specific element of this crime but instead disputes her criminal responsibility for the offense. Again viewing the evidence in the light most favorable to the State, Defendant Baxter was with Defendant Sheffield both before and during the murder of Mr. Harlan. *See Pope*, 427 S.W.3d at 369 ("Presence and companionship with the perpetrator before, during, and after the commission of the crime are circumstances upon which a juror may infer the defendant's participation."). Defendant Baxter's black and purple handgun was used in the shootings, and a rational juror could find that she gave this weapon to Defendant Sheffield to use. She was responsible for arranging the transaction and luring Mr. Whitaker and Mr. Harlan back to the scene. From her letters introduced during trial, a rational juror could have inferred that Defendant Baxter planned to kill both victims during the robbery so as not to leave a "loose end."

After the murder, Defendant Baxter acted to destroy and conceal evidence. She went to a gas station in Defendant Sheffield's Buick Rendezvous, bought a gas can, filled it with gasoline, and drove away. Within two hours of the shootings, Mr. Whitaker's car was discovered on fire with Mr. Harlan's body inside. Importantly, Defendant Baxter described these events in detail in her letters to Ms. Black.

Finally, a surveillance video from a mechanics shop showed Defendant Baxter going back to the scene of the shooting the next morning and searching for something on the ground. Officers later discovered there a cell phone belonging to Defendant Sheffield

and a sandal whose companion was located in the Buick Rendezvous. From all of this evidence, a rational juror could certainly have found that Defendant Baxter, acting with intent to promote or assist the commission of the offense, aided or attempted to aid Defendant Sheffield in murdering Mr. Harlan. As such, the proof is legally sufficient to support each of the Defendants' convictions for the first degree premeditated murder of Mr. Harlan.

### C. ATTEMPTED FIRST DEGREE MURDER OF MR. WHITAKER

Count 2 of the indictment charged each Defendant with the attempted first degree murder of Mr. Whitaker involving serious bodily injury. As previously noted above, first degree premeditated murder is "[a] premeditated and intentional killing of another[.]" Tenn. Code Ann. § 39-13-202(a)(1).

Further, as charged in this case, the crime of criminal attempt occurs when a person

> acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(3). According to this standard, "a defendant who acts with the required culpable mental state 'may be convicted of criminal attempt based on conduct constituting a substantial step toward the commission of the offense.'" *State v. Haymer*, 671 S.W.3d 568, 574 (Tenn. Crim. App. 2023) (quoting *State v. Davis*, 354 S.W.3d 718, 730 (Tenn. 2011)). Thus, in the context of attempted first degree murder, a conviction for this offense requires proof that the defendant intended to kill another person "after the exercise of reflection and judgment" and intentionally engaged in conduct that constituted a substantial step toward the commission of that offense. *See State v. Gary*, No. W2017-01495-CCA-R3-CD, 2018 WL 3689143, at *4 (Tenn. Crim. App. July 31, 2018), *no perm. app. filed*.

In addition, Count 2 charged that the attempted first degree murder resulted in serious bodily injury to Mr. Whitaker. The presence of serious bodily injury is "not an element of attempted first degree murder," but it will affect how the crime is punished.[2] *See*

---

[2] At the time of the Defendant's conviction, the fact of serious bodily injury affected the release eligibility for a person convicted of attempted first degree murder. Thus, "when a victim of

10

*Rogers v. State*, No. W2022-00019-CCA-R3-PC, 2022 WL 6957427, at *8 (Tenn. Crim. App. Oct. 12, 2022), *perm. app. denied* (Tenn. Feb. 9, 2023). As charged in this case, the term "serious bodily injury" is defined as bodily injury that involves "(A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; [or] (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" Tenn. Code Ann. § 39-11-106(a)(36)(A)-(E) (2018) (subsequently redesignated). And, the term "bodily injury" includes "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" *Id.* § 39-11-106(a)(3).

As before, neither Defendant challenges any specific element of this crime, though Defendant Baxter again challenges her criminal responsibility for the offense. Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, the proof shows that Defendant Sheffield shot Mr. Whitaker four times at close range. Mr. Whitaker was unarmed and did not provoke the attack, and at no point did the Defendants attempt to render aid to Mr. Whitaker. A rational juror could find that Defendant Sheffield, acting with premeditation and an intention to kill, took a substantial step toward the commission of the offense of first degree murder. *See State v. Rivas*, No. M2019-02241-CCA-R3-CD, 2021 WL 1625530, at *22 (Tenn. Crim. App. Apr. 27, 2021) (affirming conviction for attempted first degree murder when "the Defendants could have simply driven away from the scene, rather than fire upon the victims. The Defendants had no need to fire multiple shots at the victims, unless they intended to shoot and kill them."), *perm. app. denied* (Tenn. Aug. 4, 2021).

For her part, Defendant Baxter owned the gun used by Defendant Sheffield in the shootings, and she lured the victim to the scene. *See State v. Dickson*, 413 S.W.3d 735, 747-48 (Tenn. 2013) (recognizing that, where the defendant gave a pistol to a co-defendant, who then shot two unarmed victims, "[t]here is nothing inherently suspect about an attempted first degree murder conviction based upon the theory of criminal responsibility"). In addition, Defendant Baxter actively tried to conceal evidence of the

---

attempted first-degree murder suffer[ed] serious bodily injury as a result of the crime, a defendant [was] not eligible for release until he serve[d] 85% of his sentence." *State v. Brakefield*, No. W2023-00766-CCA-R3-CD, 2024 WL 1739263, at *4 n.3 (Tenn. Crim. App. Apr. 23, 2024), *no perm. app. filed*; Tenn. Code Ann. § 40-35-501(k)(5) (2019). By contrast, a person convicted of attempted first degree murder under current law is not eligible for release, irrespective of whether the victim suffers serious bodily injury. *See* Tenn. Code Ann. § 40-35-501(bb)(1), (2)(A) (providing that a person convicted of attempted first degree murder "shall serve one hundred percent (100%) of the sentence imposed by the court undiminished by any sentence reduction credits the person may be eligible for or earn").

crime by burning Mr. Whitaker's car and returning to the scene of the shootings to remove evidence. Finally, a rational juror could infer from the letters Defendant Baxter gave to Ms. Black that she intended to kill both Mr. Harlan and Mr. Whitaker.

The proof is also sufficient to establish that Mr. Whitaker suffered serious bodily injury. Mr. Whitaker was shot four times with wounds to his head, across his back, and in his right and left forearms. He underwent surgery on his elbow after it shattered, and his arm was in a cast for six to eight weeks. He testified that at the time of trial, he had a metal plate and twelve screws in his forearm and had lost feeling in one finger. Additionally, the shot to Mr. Whitaker's head exited through his mouth, causing the loss of several teeth. Finally, the shots left Mr. Whitaker with permanent scarring. *See State v. Fouse*, No. W2021-00380-CCA-R3-CD, 2022 WL 6257349, at *5 (Tenn. Crim. App. Oct. 10, 2022) ("[T]his [c]ourt has specifically held that a scar satisfies the requirement for protracted or obvious disfigurement" (citation and internal quotation marks omitted)), *no perm. app. filed*. We conclude that a rational juror could have found that each Defendant was criminally responsible for the attempted first degree murder of Mr. Whitaker resulting in serious bodily injury. We affirm the Defendants' convictions for the attempted first degree murder of Mr. Whitaker.

## D.    ESPECIALLY AGGRAVATED ROBBERY

Count 5 of the indictment charged each Defendant with the especially aggravated robbery of Mr. Whitaker. To obtain a conviction for especially aggravated robbery, the State must first prove a robbery, or an intentional or knowing theft of property from the person of another by violence or putting the person in fear. Tenn. Code Ann. § 39-13-403(a) (2018). The State must then prove that the robbery was "[a]ccomplished with a deadly weapon" and that "the victim suffer[ed] serious bodily injury." *Id.*; *State v. Henderson*, 531 S.W.3d 687, 691-92 (Tenn. 2017).

As before, neither Defendant challenges any particular element of this crime. Nevertheless, viewing the evidence in the light most favorable to the State, Defendant Baxter initiated a meeting with Mr. Whitaker to obtain crack cocaine. Having tried twice to obtain it without money, Defendant Baxter lured Mr. Whitaker back under a pretext, and engaged Mr. Whitaker while Defendant Sheffield killed Mr. Harlan and shot Mr. Whitaker. Defendant Sheffield then struck Mr. Whitaker in the head with the pistol and rifled through his pockets.

Because no defendant challenges any element of this crime, we conclude that the evidence supports Defendant Sheffield's conviction for especially aggravated robbery. In

addition, Defendant Baxter set up the transaction, provided the handgun to Defendant Sheffield, lured the victims to the location, and engaged Mr. Whitaker so that the robbery could be accomplished. A rational juror could have found that she was criminally responsible for this crime, as she intended to promote the offense and then aided its commission. We affirm the Defendants' convictions for especially aggravated robbery.

### E.     FIRST DEGREE FELONY MURDER

The grand jury charged the Defendants with two counts of first degree felony murder. Count 3 of the indictment charged each Defendant with unlawfully killing Mr. Harlan in the perpetration of the attempted first degree murder of Mr. Whitaker. Count 4 charged each Defendant with unlawfully killing Mr. Harlan in the perpetration of or the attempt to perpetrate an especially aggravated robbery.

First degree felony murder is defined as the "killing of another committed in the perpetration of or attempt to perpetrate" any first degree murder or robbery, among other offenses. Tenn. Code Ann. § 39-13-202(a)(2). No culpable mental state is required for a felony murder conviction except the intent to commit the underlying felony, *id.* § 39-13-202(b), and the defendant "must intend to commit the underlying felony at the time the killing occurs[.]" *State v. Buggs*, 995 S.W.2d 102, 107 (Tenn. 1999). When determining whether the killing occurred during the perpetration of the felony, our supreme court has stated that "consideration of such factors as time, place, and causation is helpful in determining whether a murder was committed 'in the perpetration of' a particular felony." *Id.* at 106. Further, "the killing may precede, coincide with, or follow the felony and still be considered as occurring 'in the perpetration of' the felony offense, so long as there is a connection in time, place, and continuity of action." *Id.*

Importantly, our supreme court has held that "in determining whether the evidence is sufficient to support a conviction for first degree murder in the perpetration of a theft, a court must determine whether the killing is closely connected to the initial taking of the property in time, place, causation, and continuity of action." *State v. Pierce*, 23 S.W.3d 289, 295 (Tenn. 2000). This is because "[t]he killing must have had an intimate relation and close connection with the felony . . . and not be separate, distinct, and independent from it." *State v. Thacker*, 164 S.W.3d 208, 223 (Tenn. 2005) (citation omitted; omission in original).

Importantly, "[w]hen one enters into a scheme with another to commit one of the felonies enumerated in the felony murder statutes, and death ensues, both defendants are

13

responsible for the death regardless of who actually committed the murder and whether the killing was specifically contemplated by the other." *State v. Winters*, 137 S.W.3d 641, 659 (Tenn. Crim. App. 2003) (citation and internal quotation marks omitted). Thus, a "defendant who is a willing and active participant in a robbery becomes accountable for all of the consequences flowing from the robbery and may be convicted of first-degree murder where a co-perpetrator of the felony is the actual killer." *State v. Middlebrooks*, 840 S.W.2d 317, 336 (Tenn. 1992).

Neither Defendant challenges any specific element of these first degree murder offenses. Nevertheless, as we discussed above, a rational juror could easily have found that each Defendant intended to commit the underlying felonies of especially aggravated robbery and attempted first degree murder and that Mr. Harlan's death occurred during the perpetration of these offenses. We affirm the Defendants' convictions for first degree felony murder.

### F.     ABUSE OF A CORPSE

Count 6 of the indictment charged each Defendant with the crime of abuse of a corpse, though only Defendant Sheffield challenges this conviction on appeal. As charged in this case, a person abuses a corpse when the person, "without legal privilege, knowingly: (1) Physically mistreats a corpse in a manner offensive to the sensibilities of an ordinary person[.]" Tenn. Code Ann. § 39-17-312 (2018). This court has recognized that burning a body beyond recognition to conceal a crime may qualify as abuse of a corpse. *See State v. Sloan*, No. M2023-00331-CCA-R3-CD, 2024 WL 1526116, at *6 (Tenn. Crim. App. Apr. 9, 2024), *no perm. app. filed*; *State v. Williams*, No. M2014-02049-CCA-R3-CD, 2015 WL 5032051, at *3 (Tenn. Crim. App. Aug. 26, 2015), *perm. app. denied* (Tenn. Nov. 24, 2015).

Defendant Sheffield does not challenge any particular element of this crime. Nevertheless, a rational juror could have found that Defendant Sheffield was criminally responsible for this offense. Viewing the evidence in a light most favorable to the State, the proof shows that Mr. Whitaker observed Defendant Sheffield's Buick Rendezvous near his friend's apartment. Shortly thereafter, his car was taken and driven to the cemetery about fifteen miles away. There, Defendant Baxter, who was driving Defendant Sheffield's Buick Rendezvous, arrived within two hours after the shooting and burned both the car and Mr. Harlan's body inside.

14

Given the times and distances involved, a rational juror could have reasonably inferred from the evidence that Defendant Baxter did not somehow drive both cars to the cemetery and that a second person was responsible for taking Mr. Whitaker's car to that location. Given Defendant Sheffield's participation in the shooting before, his motive for destroying evidence, and his giving his car to Defendant Baxter, a rational juror could also have inferred that Defendant Sheffield was that second person. In so doing, a rational juror could have found that Defendant Sheffield acted with the intent to promote or assist in the burning of Mr. Harlan's body and then aided or attempted to aid Defendant Baxter in doing so. We affirm Defendant Sheffield's conviction for the abuse of a corpse.

## G. UNLAWFUL POSSESSION OF A FIREARM BY A CONVICTED FELON

Count 7 of the indictment charged only Defendant Sheffield with knowingly possessing a firearm after having "been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon[.]" Tenn. Code Ann. § 39-17-1307(b)(1)(A) (2018). At the time of the offense, the phrase "crime of violence" was defined as including burglary, aggravated burglary, and especially aggravated burglary. Tenn. Code Ann. § 39-17-1301(3) (2018).

In a bifurcated guilt proceeding that occurred before the jury sentencing phase of the trial, the State introduced evidence that Defendant Sheffield had several prior felony convictions, including one for aggravated burglary. Neither the State nor Defendant Sheffield offered additional proof or made any arguments to the jury. After being instructed, the jury determined that Defendant Sheffield had a prior conviction for aggravated burglary.

As before, Defendant Sheffield challenges the legal sufficiency of the convicting evidence without contesting any particular element of this crime. Nevertheless, viewing the evidence in the light most favorable to the State, the proof shows that Defendant Sheffield was in possession of a firearm during the purported drug exchange when he used it to shoot Mr. Harlan and Mr. Whitaker multiple times. The evidence also shows that he had a prior conviction for aggravated burglary, a crime of violence. We conclude that a rational juror could have found each of the essential elements of this offense beyond a reasonable doubt. As such, we respectfully affirm Defendant Sheffield's conviction for unlawful possession of a firearm by a felon convicted of a crime of violence.

15

**H. EMPLOYMENT OF A FIREARM DURING THE COMMISSION OF A DANGEROUS FELONY**

Finally, Count 8 of the indictment charged only Defendant Sheffield with the crime of employing a firearm during the commission of a dangerous felony. As charged in this case, it is an "offense to employ a firearm or antique firearm during the . . . [c]ommission of a dangerous felony." Tenn. Code Ann. § 39-17-1324(b)(1) (Supp. 2020). A "dangerous felony" is defined as including an "[a]ttempt to commit first degree murder, as defined in §§ 39-12-101 and 39-13-202[.]" *Id.* § 39-17-1324(i)(1)(A). Our supreme court has recognized that the term "employ" means "to make use of." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014).

Defendant Sheffield again challenges the legal sufficiency of the convicting evidence without contesting any particular element of this crime. Nevertheless, viewing the evidence in the light most favorable to the State, the proof shows that Defendant Sheffield used a firearm in an intentional and premeditated attempt to kill Mr. Whitaker. Under the deferential standard of review, we conclude that a rational juror could have found the essential elements of this offense beyond a reasonable doubt. We respectfully affirm Defendant Sheffield's conviction for employing a firearm during the commission of a dangerous felony.

## II. ISSUES RAISED BY DEFENDANT SHEFFIELD

Because Defendant Baxter only challenged the legal sufficiency of the evidence supporting her convictions, we respectfully affirm her convictions and sentences. We now turn to the issues raised only by Defendant Sheffield in this appeal. For this next section of our opinion, we may also refer to Defendant Sheffield simply as "the Defendant."

In addition to challenging the legal sufficiency of the evidence, the Defendant further argues that the trial court abused its discretion in denying his motion to sever the Defendants' cases and in admitting photographs of Mr. Harlan's remains during the jury's sentencing phase. He also maintains that the trial court improperly sentenced him for the non-homicide convictions by failing to consider the risk and needs assessment, miscalculating the range, and imposing consecutive sentences beyond his life term.

We consider each of these issues in turn.

## A.    JOINT TRIAL ISSUES

The Defendant first challenges the trial court's decision to hold a joint trial with Defendant Baxter's case, raising three interrelated issues.  First, he argues that the trial court erred in denying his motion to sever pursuant to Tennessee Rule of Criminal Procedure 14.  Next, he asserts that the trial court should not have permitted Kristi Black to testify about the letters she received from Defendant Baxter, as he contends that her testimony was relevant only to Defendant Baxter's case.  Finally, he maintains that the trial court should have granted his request for a limiting instruction on how to consider Defendant Baxter's confessional letters.

### 1.    Severance of Defendants

Taking these issues one at a time, the Defendant first argues that he was entitled to have his case severed from Defendant Baxter's case pursuant to Tennessee Rule of Criminal Procedure 14.  Specifically, he asserts that Defendant Baxter's letters introduced at trial were prejudicial to him and a violation of *Bruton v. United States*, 391 U.S. 123 (1968).[3]  The State responds that the trial court acted within its discretion by denying the Defendant's motion to sever the trials and that the Defendant failed to show that he suffered prejudice.  We agree with the State.

### a.    Standard of Appellate Review

We review a trial court's denial of a motion for severance under an abuse of discretion standard.  *See State v. Dotson*, 254 S.W.3d 378, 390 (Tenn. 2008); *State v.*

---

[3]    As an initial matter, there is some question about whether *Bruton* applies at all in this context.  In a jury-out hearing, Ms. Black testified that she received the letters from Defendant Baxter when they were both in custody.  Because Defendant Baxter gave her letters to a fellow prisoner, it is at least arguable that the letters are not testimonial in nature.  *See Davis v. Washington*, 547 U.S. 813, 825 (2006) (recognizing that "statements from one prisoner to another" are "clearly nontestimonial").

This fact is important because some courts have held that *Bruton* does not apply to the non-testimonial statements of a non-testifying co-defendant.  *See, e.g.*, *United States v. Benson*, 957 F.3d 218, 230 (4th Cir. 2020) ("As an initial matter, *Bruton* does not apply here because the Confrontation Clause is only implicated in the context of testimonial statements."); *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) ("Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements.").  Nevertheless, we reach no conclusion on this issue because the parties do not contest whether *Bruton* applies to nontestimonial statements.  *See* Tenn. R. App. P. 13(b).  Moreover, at least in the severance context, Defendant Baxter's letters are nevertheless subject to Tennessee Rule of Criminal Procedure 14(c)(1), as we discuss below.

17

*Carruthers*, 35 S.W.3d 516, 552 (Tenn. 2000). A trial court abuses its discretion if it "applie[s] an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *Dotson*, 254 S.W.3d at 387-88 (citation and internal quotation marks omitted). As our supreme court has made clear, "[r]eversal is required only when the record demonstrates that the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of a severance became a judicial duty." *Carruthers*, 35 S.W.3d at 553 (cleaned up).

### b. Severance Considered with Admission of Co-defendant's Confession

Generally speaking, "[j]oint trials of defendants charged in the same indictment are favored because they promote efficiency and reduce the possibility of inconsistent verdicts." *State v. Harbison*, 539 S.W.3d 149, 158 (Tenn. 2018). They may also "enable a more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Thus, Tennessee Rule of Criminal Procedure 8(c)(3)(B) permits joinder of defendants in the same indictment when the several offenses charged "were so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." *See also* Tenn. R. Crim. P. 8, Advisory Comm'n Cmt. ("Permissive joinder of defendants . . . is aimed at achieving improved judicial economy and efficiency.").[4]

However, even where a joinder of defendants is appropriate, a trial court must sever the cases before trial if it finds that severance is "appropriate to promote a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(A). No bright line exists as to when a trial court should grant a request to sever defendants. *Harbison*, 539 S.W.3d at 159. However, when considering whether to sever defendants, trial courts should consider the following non-dispositive factors:

> the number of defendants named in the indictment, the number of counts charged in the indictment, the complexity of the indictment, the estimated length of the trial, the disparities in the evidence offered against the defendants, the disparities in the degrees of involvement by the defendants in the charged offenses, possible conflicts between the defendants and their

---

[4] The Defendant does not contest that the cases were properly joined pursuant to Rule 8(c)(3)(B). Instead, he argues that the trial court should nevertheless have severed the cases because Defendant Baxter's letters were prejudicial to him.

strategies, and prejudice from evidence admitted against a co-defendant(s) which is inadmissible or excluded as to another defendant.

*Id.*

Despite the efficiencies inherent in a joint trial, special concerns may attend the enterprise where certain evidence is admissible against one defendant but not against another. For example, the United States Supreme Court has recognized one such situation where a defendant is implicated in the pretrial confession of a co-defendant when the co-defendant does not testify at the joint trial. In that circumstance, the defendant may be deprived of his or her Sixth Amendment right to confront witnesses, and consequently, the original confession cannot be admitted in the joint trial. *See Bruton*, 391 U.S. at 126.

While important, this exclusionary rule is limited. *Bruton* does not exclude confessions that "[d]o not implicate the non-confessing defendant," and it does not apply to "confessions from which all references to the moving defendant have been effectively deleted, provided that, as deleted, the confession will not prejudice the moving defendant." *Dorsey v. State*, 568 S.W.2d 639, 642 (Tenn. 1978) (citations omitted). Moreover, the *Bruton* "rule applies only to 'directly accusatory' incriminating statements," and it will not exclude statements "that do 'not refer directly to the defendant' and 'bec[o]me incriminating only when linked with evidence introduced later at trial.'" *Samia v. United States*, 599 U.S. 635, 653 (2023) (quoting *Gray v. Maryland*, 523 U.S. 185, 194, 196 (1998)).

When *Bruton* concerns arise in our trial courts, Tennessee Rule of Criminal Procedure 14(c)(1) addresses how these issues may be resolved. *See Metz v. State*, No. M2019-00883-CCA-R3-PC, 2021 WL 58197, at *34 (Tenn. Crim. App. Jan. 7, 2021), *no perm. app. filed*. Under Rule 14(c)(1), the State may agree to sever the defendants' cases or simply not use the confession in the joint trial. *See* Tenn. R. Crim. P. 14(c)(1)(C), (A). However, another option is available as well: the State may choose to use the confession against the confessing defendant in the joint trial by redacting all references to the other defendant. *See* Tenn. R. Crim. P. 14(c)(1)(B) (allowing the State to elect "a joint trial at which the statement is admitted in evidence only after all references to the moving defendant have been deleted and if the redacted confession will not prejudice the moving defendant").

In this case, the State elected to use Defendant Baxter's confession against her in the joint trial while redacting all references to Defendant Sheffield. *See* Tenn. R. Crim. P. 14(c)(1)(B). Indeed, the State did not just redact Defendant Sheffield's name from the

letters, but it also removed any portions that likely would have mentioned him. With these redactions, the letters did not mention Defendant Sheffield or even imply the involvement of a second person in the events described.

Nothing remaining in the redacted letters could be said to have "directly inculpated" Defendant Sheffield. *See Samia*, 599 U.S. at 655; *Richardson*, 481 U.S. at 221. Thus, because no *Bruton* violation would follow from the admission of Defendant Baxter's letters, no severance of Defendant Sheffield's case was necessary. *See* Tenn. R. Crim. P. 14(c)(1)(B), Advisory Comm'n Cmt. (noting that the rule "mak[es] severance unnecessary where no *Bruton* violation would follow, as would be true, for example, where the confessing codefendant testifies or where redaction eliminates any prejudice to the nonconfessing codefendant"). The trial court, therefore, acted within its discretion to deny Defendant Sheffield's motion to sever his case from Defendant Baxter's. The Defendant is not entitled to relief on these grounds.

### 2. Admission of Ms. Black's Testimony

In a variation on the theme, the Defendant also argues that the testimony of Kristi Black should not have been permitted because it was irrelevant to his case. He argues that Ms. Black's testimony was relevant only to Defendant Baxter and should not have been admitted during the joint trial. The State responds that the trial court did not abuse its discretion in admitting this evidence and that the Defendant has failed to show that he suffered any prejudice. We agree with the State.

The Defendant's argument may misapprehend the nature of joint trials. In essence, the Defendant argues that evidence is not admissible in a joint trial unless the evidence is directly relevant to the criminal liability of each defendant. Respectfully, this position is not the law. On the contrary, we have recognized that the very nature of a joint trial "contemplates that evidence may be admitted against one or more defendants which is not necessarily applicable to another defendant." *State v. Meeks*, 867 S.W.2d 361, 369 (Tenn. Crim. App. 1993); *Black v. State*, 794 S.W.2d 752, 758 (Tenn. Crim. App. 1990). As such, the mere fact that damaging evidence will be admitted against one defendant is not, by itself, a reason to order a severance or to prohibit the introduction of that evidence in the joint trial. *See id.*; *Harbison*, 539 S.W.3d at 159.

In this case, the State called Ms. Black to testify about the confessional letters sent to her by Defendant Baxter. Defendant Baxter's prior statements were relevant to her own criminal liability, and because they were properly redacted to remove references to

Defendant Sheffield, they were properly admissible in the joint trial pursuant to Tennessee Rule of Criminal Procedure 14(c)(1)(B). Under these circumstances, the admission of this evidence in the joint trial did not so clearly prejudice Defendant Sheffield—if it did so at all—such that severance became a judicial duty. *See Meeks*, 867 S.W.2d at 369. The Defendant is not entitled to relief on these grounds.

### 3. Jury Instruction on Evidence with Limited Admissibility

In his final issue relating to severance, Defendant Sheffield argues that the trial court should have instructed the jury that the letters between Defendant Baxter and Ms. Black could be considered only as to Defendant Baxter. For its part, the State asserts that the trial court properly instructed the jury to give separate consideration to each Defendant and that no additional instruction was required. We agree with the Defendant.

### a. Background

During Ms. Black's testimony, the State introduced letters written to her from Defendant Baxter detailing aspects of the crimes and her participation in them. At the charge conference, the Defendant submitted the following proposed limiting jury instruction to the court:

> You heard from a witness named Kristi Black as to certain conversations she allegedly had with Destiny Baxter. Her testimony is only to be considered by you as to Ms. Baxter. This evidence should in no way be considered as being proof as to Mr. Sheffield. Put another way in the evaluation of Mr. Sheffield's case her statements cannot be considered, and you should render your decision as to Mr. Sheffield as though Ms. Black never testified.

The State objected to this jury instruction, arguing that Defendant Baxter's letters were appropriate evidence for the jury to consider under the theory of criminal responsibility. Agreeing with the State, the trial court denied the Defendant's motion. Instead, the trial court instructed the jury regarding all of the evidence in the case:

> You should give separate consideration to each defendant. Each is entitled to have their case decided on the evidence and the law which is applicable to that particular defendant. Any evidence which was limited to a particular defendant should not be considered by you as to any other defendant. You

21

can acquit both or convict both, or you can acquit one or more and convict the other or others.

### b.      Standard of Appellate Review

"Challenges to jury instructions present mixed questions of law and fact; therefore, we review challenged instructions de novo without a presumption of correctness." *State v. Smith*, 492 S.W.3d 224, 245 (Tenn. 2016); *State v. Hancock*, 678 S.W.3d 226, 237 (Tenn. Crim. App. 2023). "A trial court's refusal to grant a special instruction is error only when the general charge does not fully and fairly state the applicable law." *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013).

### c.      Evidence with Limited Admissibility and Tenn. R. Evid. 105

A criminal defendant has a "right to a correct and complete charge of the law." *State v. Hanson*, 279 S.W.3d 265, 280 (Tenn. 2009) (citing *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000)). As such, "the trial court has the duty to give a comprehensive instruction of the law as applicable to the facts in each case[.]" *Id.* Our supreme court has recognized that "[t]he purpose of a special instruction is to supply an omission or correct a mistake made in the general charge, to present a material question not treated in the general charge, or to limit, extend, eliminate, or more accurately define a proposition already submitted to the jury." *State v. Adams*, 405 S.W.3d 641, 661 (Tenn. 2013) (citation and internal quotation marks omitted). Given its purpose, a special jury instruction is unnecessary when "the general charge fully and fairly sets forth the applicable law[.]" *State v. Fayne*, 451 S.W.3d 362, 373 (Tenn. 2014).

Generally speaking, a trial court has no duty, sua sponte, to provide limiting instructions to the jury on how it may consider particular evidence. *See State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *but see State v. Reece*, 637 S.W.2d 858, 861 (Tenn. 1982) (noting duty to provide a limiting instruction, even in the absence of a request, where the case is weak and evidence is "extremely damaging"). Sometimes, however, evidence offered at trial "may be admissible for some purposes but not for others." *Smith*, 24 S.W.3d at 279. When evidence is admissible for one purpose, but not for others, a party may request that the jury be instructed as to how the evidence may be properly considered. *See* Tenn. R. Evid. 105 ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court upon request shall restrict the evidence to its proper scope and instruct the jury accordingly.").

22

When requested by counsel, these "limiting instructions [are] mandatory." Neil P. Cohen et al., *Tennessee Law of Evidence* § 1.05[2][a] (7th ed. 2024). At least when adequate protection is not afforded by other portions of the charge, the requested limiting instructions should be given "even if the judge believes the instructions are unnecessary or that the evidence is of little value[.]" *Id.*; *State v. Little*, 402 S.W.3d 202, 210 (Tenn. 2013) ("Even when such evidence [under Tenn. R. Evid. 404(b)] is admissible, however, trial courts should, when asked to do so, 'restrict the evidence to its proper scope and instruct the jury accordingly.'" (quoting Tenn. R. Evid. 105)).

In a context where the State offers the confession of a non-testifying co-defendant, a limiting instruction may also be important to prevent Sixth Amendment issues, even if the confession is properly redacted under Tennessee Rule of Criminal Procedure 14(c)(1)(B). Indeed, in *Richardson v. Marsh*, 481 U.S. 200, 212 (1987), the United States Supreme Court recognized that a limiting instruction should be given even if the co-defendant's confession, as here, were redacted to eliminate any reference to the existence of the defendant. More recently, the Court has re-emphasized that the Confrontation Clause is not violated when the confession of the non-testifying co-defendant does "not directly inculpate the defendant" and is "subject to a proper limiting instruction." *Samia*, 599 U.S. at 655; *see also* 21A Charles Alan Wright et al., *Federal Practice and Procedure: Evidence* § 5063 (2d ed. 2013 & Supp. 2024) ("[T]he *Samia* Court blessed the use of redacted statements by codefendants provided they are accompanied by limiting instructions. . . . The redacted version must also be accompanied by a limiting instruction that warns the jury that the redacted statement is evidence against only the declarant-defendant and not any codefendants."). We have also recognized that the Confrontation Clause may, upon a defendant's request,[5] require a trial court to give a limiting instruction after the State has sought to admit the redacted confession of a non-testifying co-defendant. *See State v. Person*, 781 S.W.2d 868, 873 (Tenn. Crim. App. 1989) (recognizing, in a *Bruton* context, that "the failure to give a proper limiting instruction was error"); *Alexander v. State*, 562 S.W.2d 207, 210 (Tenn. Crim. App. 1977) (recognizing that the absence of a limiting instruction in a *Bruton* context worked to "compound the error").

In this case, Defendant Sheffield specifically requested that a limiting instruction be given to restrict the use of Defendant Baxter's letters to the jury's consideration of her criminal liability alone. This was a proper consideration as the letters were admissible for one purpose but not for others. For example, as they were Defendant Baxter's own

---

[5]   Importantly, a defendant who does not request a limiting instruction on the jury's consideration of a co-defendant's confession will waive plenary review of the issue on appeal. *See State v. Cameron*, 909 S.W.2d 836, 853 (Tenn. Crim. App. 1995).

statements, the letters were admissible against her to prove her guilt for the crimes charged. *See* Tenn. R. Evid. 803(1.2). However, no party argues that her confessionary letters were independently admissible against Defendant Sheffield when offered to prove the truth of their contents. *See* Tenn. R. Evid. 801, 802. Thus, although this evidence was properly admitted in the joint trial, the purposes for which the jury could properly consider the letters were limited. As such, because Defendant Sheffield requested a limiting instruction, the trial court should have provided one, though not necessarily in the form he requested. *See* Tenn. R. Evid. 105.

Pushing against this conclusion, the State argues that the remainder of the charge adequately accounted for this issue. In particular, it asserts that the jury was instructed to give separate consideration to each Defendant and that "[a]ny evidence which was limited to a particular defendant should not be considered by you as to any other defendant." We agree that these instructions were generally proper for the conduct of a joint trial involving multiple defendants. However, the issue here is that Defendant Baxter's letters were not, in fact, limited to a particular defendant, despite Defendant Sheffield's request to do so and despite possible issues arising under *Richardson* and *Samia*. Because no such limitation occurred despite the request, we respectfully disagree that the remainder of the charge adequately accounted for the limited admissibility of the letters. *See, e.g.*, *State v. Flynn*, No. W2015-01648-CCA-R3-CD, 2017 WL 1861784, at *18 (Tenn. Crim. App. May 5, 2017) (noting error when "[a]lthough the trial court gave a generic jury instruction that any evidence limited to one defendant should not be considered against the other defendant, the trial court did not specifically instruct the jury that Mr. Benson's statement could only be considered against Mr. Benson and not Mr. Flynn."), *perm. app. denied* (Tenn. Sept. 22, 2017); *Spears v. Mullin*, 343 F.3d 1215, 1232 (10th Cir. 2003) ("The general instruction given at the end of the trial charging the jury to give separate consideration to each defendant was insufficient to satisfy *Richardson*.").

Nevertheless, the absence of the limiting instruction is clearly harmless beyond a reasonable doubt. *See King v. State*, 989 S.W.2d 319, 329-30 (Tenn. 1999) (analyzing *Bruton* issue under *Chapman* standard for harmless error); *Thomas v. State*, No. W2008-01941-CCA-R3-PD, 2011 WL 675936, at *24 (Tenn. Crim. App. Feb. 23, 2011) (same), *perm. app. denied* (Tenn. Aug. 25, 2011). The jury was properly instructed on the separate consideration of the evidence and on the principles of criminal responsibility, and the case was not so complex that the jury could not fairly evaluate the evidence against each Defendant. The State did not use Defendant Baxter's letters during its closing argument to assert Defendant Sheffield's guilt. Instead, they were used only to corroborate Mr. Whitaker's testimony and to establish Defendant Baxter's own guilt. Given that the letters

24

were redacted to avoid any reference to the existence of Defendant Sheffield, the risk that the letters could be improperly considered as evidence of his guilt was minimal, if any.

More importantly, the evidence overwhelmingly established Defendant Sheffield's participation in the murder of Mr. Harlan and the attempted murder of Mr. Whitaker. Independent of the letters, the evidence established that Defendant Sheffield was directly responsible for the murder of Mr. Harlan and the attempted murder and robbery of Mr. Whitaker. Independent evidence also established Defendant Sheffield's criminal responsibility for the abuse of Mr. Harlan's body, as we discussed above. The absence of the limiting instruction was harmless beyond a reasonable doubt. *See State v. Ogle*, 666 S.W.2d 58, 60 (Tenn. 1984) (holding that a *Bruton* violation may be harmless when "ample evidence was available to demonstrate petitioner's guilt without reliance upon his co-defendant's confession"); *Flynn*, 2017 WL 1861784, at *18 (analyzing harmless error from the absence of a limiting instruction, in part, by evaluating the strength of proof offered independent of the co-defendant's confession); *State v. Freeman*, No. M2006-02751-CCA-R3-CD, 2008 WL 833936, at *23 (Tenn. Crim. App. Mar. 28, 2008) (same), *perm. app. denied* (Tenn. Oct. 27, 2008). The Defendant is not entitled to relief on this ground.

## B.    ADMISSION OF PHOTOGRAPHS DURING THE SENTENCING PHASE

The Defendant next argues that the trial court erred when it allowed photographs showing Mr. Harlan's remains to be admitted into evidence during the sentencing phase of the trial.[6] Specifically, the Defendant argues that this evidence was cumulative and was inadmissible under Tennessee Rule of Evidence 403. In response, the State alleges that these photographs were probative of an aggravating circumstance to be proven at sentencing. We agree with the State.

---

[6] In his point heading introducing this argument, the Defendant also alleges that the trial court erred in admitting the officer's testimony describing Mr. Harlan's remains. However, he offers no further argument or mention of this issue anywhere in his principal or reply briefs. Of course, "simply raising an issue is not sufficient to preserve it for appellate review." *State v. Cunningham*, No. M2023-00909-CCA-R3-CD, 2024 WL 3634259, at *2 (Tenn. Crim. App. Aug. 2, 2024) (citation omitted), *no perm. app. filed*. As such, we conclude that the Defendant has waived any argument regarding the admissibility of the officer's testimony. *See* Tenn. Ct. Crim. App. R. 10(b); *State v. Molthan*, No. M2021-01108-CCA-R3-CD, 2022 WL 17245128, at *2 (Tenn. Crim. App. Nov. 28, 2022), *no perm. app. filed.*

### 1. Background

In this case, the State sought a sentence of imprisonment for life without possibility of parole pursuant to Tennessee Code Annotated section 39-13-207(a)(1) (Supp. 2022). In part, it alleged that one aggravating circumstance supported the jury's consideration of that sentence: that the Defendant "knowingly mutilated the body of the victim after death." Tenn. Code Ann. § 39-13-204(i)(13) (2018) (subsequently amended).

At the sentencing hearing before the jury, the State sought to introduce five photographs of Mr. Harlan's remains that were not admitted during the guilt phase of the trial. Defense counsel objected and argued that the State had already introduced a photograph with "part of the body in it," noting that it was also sometimes "hard to tell what is what in some of the photographs." However, the trial court held that the photographs were admissible in the sentencing phase of the trial because they demonstrated the Defendant's treatment of the victim's body.

### 2. Standard of Appellate Review

On appeal, we typically review questions involving the admission of evidence for an abuse of discretion. *See Miller*, 638 S.W.3d at 163 (so recognizing in the context of a sentencing hearing conducted pursuant to Tenn. Code Ann. § 39-13-204(c)). Our supreme court has emphasized that "when making discretionary decisions, trial courts 'must take the applicable law and the relevant facts into account.'" *State v. Frausto*, 463 S.W.3d 469, 481 (Tenn. 2015) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). As we stated earlier, an abuse of discretion "occurs when the trial court 'applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.'" *State v. Johnson*, 401 S.W.3d 1, 21 (Tenn. 2013) (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)).

### 3. Evidence Admitted in Jury Sentencing

A sentence of imprisonment for life without possibility of parole may only be imposed by a jury after it finds a defendant guilty of an eligible crime, including first degree murder. *See* Tenn. Code Ann. § 39-13-207(a)(1). Before the jury may impose such a sentence, the trial court must hold a separate sentencing hearing. *See id.* The jury must first unanimously find that the State has proven at least one statutory aggravating

26

circumstance beyond a reasonable doubt. It must then weigh that aggravating circumstance against any mitigating circumstances. *See id.* § 39-13-207(c), (d).

This type of sentencing hearing is conducted pursuant to the procedures established by section 39-13-204. *See* Tenn. Code Ann. § 39-13-207(a)(1). During the hearing, the jury's ability to consider evidence is broad:

> In the sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the punishment, and may include, but not be limited to, the nature and circumstances of the crime; the defendant's character, background history, and physical condition; any evidence tending to establish or rebut the aggravating circumstances enumerated in subsection [39-13-204(i)]; and any evidence tending to establish or rebut any mitigating factors.

Tenn. Code Ann. § 39-13-204(c). In addition, "[a]ny such evidence that the court deems to have probative value on the issue of punishment may be received, regardless of its admissibility under the rules of evidence; provided, that the defendant is accorded a fair opportunity to rebut any hearsay statements so admitted." *See id.*

In this case, the State introduced photographs of Mr. Harlan's remains to establish the (i)(13) aggravating circumstance involving the mutilation of the victim's body after death. The Defendant argues on appeal that the photographs were inadmissible under Tennessee Rule of Evidence 403 because they were cumulative to evidence introduced at trial.[7] We respectfully disagree.

Our supreme court has recognized that the Tennessee Rules of Evidence may be used as guidance during a sentencing hearing held pursuant to section 39-13-204(c). *See State v. Clayton*, 535 S.W.3d 829, 857 (Tenn. 2017). However, that court has also been clear that the Rules of Evidence "should not be applied to preclude introduction of otherwise reliable evidence that is relevant to the issue of punishment, as it relates to mitigating or aggravating circumstances, the nature and circumstances of the particular crime, or the character and background of the individual defendant." *Id.* (quoting *State v. Sims*, 45 S.W.3d 1, 14 (Tenn. 2001)); *see also Miller*, 638 S.W.3d at 163 (observing that

---

[7] Tennessee Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

the current version of section 39-13-204(c) "seems to suggest that Tennessee Rule of Evidence 403 does not routinely impede the admission of such [video evidence of prior crimes]"). Indeed, our supreme court has recognized that arguably cumulative photographic evidence may be admitted at a sentencing hearing pursuant to section 39-13-204(c) when the evidence has probative value to establish an aggravating circumstance. *See, e.g.*, *State v. Leach*, 148 S.W.3d 42, 67 (Tenn. 2004) (appendix); *State v. Hall*, 8 S.W.3d 593, 602 (Tenn. 1999).

Such is the case here. The State's photographs showed Mr. Harlan's remains after he was killed and his body nearly cremated. They were thus highly probative to prove the State's aggravating circumstance for sentencing purposes. Even if these photographs were cumulative to the trial proof—and we see no such indication from the appellate record that they were—the trial court acted within its discretion to admit the photographs at the sentencing phase pursuant to section 39-13-204(c) after the Defendant's guilt had been determined. *See Miller*, 638 S.W.3d at 163. We conclude that the Defendant is not entitled to relief on this ground.

C.    SENTENCING

Finally, the Defendant challenges the trial court's sentence of life plus thirty-five years, raising three arguments. First, he argues that the trial court erred when it did not consider the Defendant's risk and needs assessment before sentencing him for the non-homicide convictions. Next, he argues that the trial court erred by not fully articulating how it was determined that he was a Range II, multiple offender. Finally, the Defendant asserts that the trial court improperly imposed consecutive sentences. We address each of these issues in turn.

1.    Risk and Needs Assessment

The Defendant first argues that the trial court erred in failing to consider a risk and needs assessment with respect to his non-homicide felony convictions. The State responds that the Defendant has waived this issue at the sentencing hearing. We agree with the State.

As part of the Public Safety Act of 2016, the General Assembly required that the results of a validated risk and needs assessment be included as part of a defendant's presentence report in felony cases. Tenn. Code Ann. § 40-35-207(a)(10) (2019). As the legislature defined the concept, a "validated risk and needs assessment" is "a determination of a person's risk to reoffend and the needs that, when addressed, reduce the risk to reoffend

28

through the use of an actuarial assessment tool designated by the department that assesses the dynamic and static factors that drive criminal behavior." *Id.* § 40-35-207(d); *see also State v. Solomon*, No. M2018-00456-CCA-R3-CD, 2018 WL 5279369, at *7 (Tenn. Crim. App. Oct. 23, 2018), *no perm. app. filed*.

A sentencing court is required to consider the results of a risk and needs assessment. *See State v. Pace*, No. W2022-01092-CCA-R3-CD, 2023 WL 6626457, at *2 (Tenn. Crim. App. Sept. 1, 2023), *perm. app. denied* (Tenn. Apr. 11, 2024); Tenn. Code Ann. § 40-35-210(b)(8) (2019). That said, as is the case with virtually all sentencing factors, a trial court is not required to attribute any particular weight to the results of the risk and needs assessment. Instead, "the weight to be assigned to the assessment falls within the trial court's broad discretionary authority in the imposition of sentences." *Solomon*, 2018 WL 5279369, at *7.

When a trial court does not consider the risk and needs assessment during sentencing, a defendant on appeal is not necessarily entitled to a new sentencing hearing. Our cases have recognized that where a defendant affirmatively waives consideration of a risk and needs assessment, he or she is estopped to complain on appeal that the sentence was imposed without that instrument. *See State v. Spencer*, No. W2023-01008-CCA-R3-CD, 2024 WL 4902263, at *7 (Tenn. Crim. App. Nov. 27, 2024), *no perm. app. filed.* A defendant's affirmative waiver does not excuse the trial court's duty to consider the risk and needs assessment. But this court will not permit a defendant "to game the system by affirmatively withholding objections until after receiving an unfavorable result." *State v. Ross*, No. E2023-00381-CCA-R3-CD, 2024 WL 2954404, at *5 (Tenn. Crim. App. June 12, 2024), *no perm. app. filed*.

To this end, we have recognized that a defendant affirmatively waives consideration of a risk and needs assessment by so stating on the record. *Id.* But we have also recognized that an affirmative waiver occurs when the defendant states that he or she has no objection to the contents of a presentence report that does not contain the assessment. *See Spencer*, 2024 WL 4902263, at *7 (finding that the defendant "is estopped from asserting that the lack of a validated risk and needs assessment constitutes reversible error" when he represented that he had no objection to the contents of the presentence report).

In this case, a risk and needs assessment was not attached to the Defendant's presentence report. However, the Defendant did not reference the risk and needs assessment or object to its absence. On the contrary, he affirmatively represented to the trial court at the sentencing hearing that he had "no objection to the presentence report." Under these circumstances, we conclude that the Defendant "is estopped from asserting

29

that the lack of a validated risk and needs assessment constitutes reversible error." *Spencer*, 2024 WL 4902263, at *7. He is not entitled to relief on this ground.

## 2. Range Determination

The Defendant next argues that the trial court erred when it failed to properly identify how the Defendant was a Range II, multiple offender. The State responds that the trial court properly identified the Defendant's prior felony convictions and articulated its reasoning. We agree with the State.

In Tennessee, a defendant's sentencing range for any given offense is determined by considering two variables: the offense class and the defendant's offender classification. *State v. Menke*, 590 S.W.3d 455, 464 (Tenn. 2019). The offender classification has five separate "ranges" of increasing punishment, and the appropriate range is determined by the defendant's history of prior felony criminal convictions. *See State v. Bise*, 380 S.W.3d 682, 691 (Tenn. 2012); Tenn. Code Ann. §§ 40-35-105 to -109 (2019). The State has the burden "to prove beyond a reasonable doubt that the defendant has the requisite number of prior felonies to establish the sentencing range." *See State v. Vick*, 242 S.W.3d 792, 796 (Tenn. Crim. App. 2007).

For example, a defendant may be classified as a Range II, multiple offender when he or she has a minimum of two, but not more than four, prior qualifying felony convictions. *See* Tenn. Code Ann. § 40-35-106(a)(1). Among other things, a qualifying felony conviction for Range II purposes is one that is within either (i) the same offense class as the instant conviction offense; (ii) a higher class; or (iii) the next two lower felony classes. *See id.* Thus, if a defendant is sentenced for a Class B felony, an otherwise qualifying prior conviction for a Class A, B, C, or D felony may be counted toward a Range II classification. However, a prior conviction for a Class E felony could not be counted, because "a Class E felony is not within the next two lower felony classifications." *See id.*, Sent. Comm'n Cmts.

As is relevant here, the jury convicted the Defendant of two Class A felonies, a Class B felony, a Class C felony, and a Class E felony. As such, the Defendant would qualify as a Range II offender in the following circumstances:

- **For his two Class A felonies:** If he had been previously convicted either of (1) a single qualifying Class A felony; or (2) at least two qualifying felonies that were Class B or C felonies, *see* Tenn. Code Ann. § 40-35-106(a)(1), (2);

30

- **For his Class B felony:** If he had been previously convicted either of (1) a single qualifying Class A felony; or (2) at least two qualifying felonies that were Class B, C, or D felonies, *see id.*; and

- **For his Class C and E felonies:** If he had been previously convicted of at least two qualifying felonies in any offense class, *see id.*

Consistent with its pretrial notice to the Defendant, the State established at the sentencing hearing that the Defendant had been convicted of five prior felony offenses, including a Class B felony, three Class C felonies, and a Class E felony. In its announcement, the trial court identified the Defendant's prior felony convictions and their classes, and it found that the Defendant was a Range II, offender for each offense before the court. We agree. For each of the Defendant's present convictions, he has at least two prior qualifying felonies that are in the same class, a higher class, or within the next two lower classes. As such, we conclude that the record establishes beyond a reasonable doubt that the Defendant is at least a Range II, multiple offender for each conviction.[8] This issue is without merit.

### 3.  Length of Consecutive Sentences

The Defendant also challenges the trial court's imposition of consecutive sentences. Specifically, the Defendant argues that the consecutive sentences beyond life without parole serve no purpose. The State responds that the trial court properly exercised its discretion when it imposed consecutive sentences. We agree with the State.

When a defendant challenges the trial court's decision to impose consecutive sentences, we review that decision for an abuse of discretion accompanied by a presumption of reasonableness. *See State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). Thus, we defer to "the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Id.* at 861. As our supreme court has recognized, "[s]o long as a trial court properly articulates reasons

---

[8]  In fact, the Defendant may have qualified as a Range III, persistent offender for his Class C and E felony convictions, as he has five prior felony convictions "within the conviction class or higher or within the next two (2) lower felony classes[.]" *See* Tenn. Code Ann. § 40-35-107(a)(1) (2019). However, because the State only sought a sentencing enhancement in Range II, as was its prerogative, we do not discuss the issue further. *See State v. Purvis*, No. W2016-00386-CCA-R3-CD, 2017 WL 1192115, at *6 (Tenn. Crim. App. Mar. 30, 2017) (recognizing the State's discretion not to seek enhanced punishment in a particular range "even if the defendant qualifies for such"), *perm. app. denied* (Tenn. July 19, 2017); Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

31

for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862.

The process of imposing discretionary consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b) involves two steps. First, the trial court must find by a preponderance of the evidence that "the defendant qualifies for consecutive sentencing under one of the classifications set forth in section 40-35-115(b)." *State v. Perry*, 656 S.W.3d 116, 127 (Tenn. 2022) (footnote omitted). Second, the trial court must "then choose whether, and to what degree, to impose consecutive sentencing based on the facts and circumstances of the case, bearing in mind the purposes and principles of sentencing." *Id.*

In this case, the trial court found that the Defendant was a dangerous offender and qualified for consecutive sentencing pursuant to Tennessee Code Annotated section 40-35-115(b)(4). Our supreme court has held that "before imposing consecutive sentences based upon the dangerous offender classification, trial courts must conclude that the evidence has established that the aggregate sentence is 'reasonably related to the severity of the offenses' and 'necessary in order to protect the public from further criminal acts.'" *Pollard*, 432 S.W.3d at 863 (quoting *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995)).

To this end, the trial court made several findings supporting consecutive sentences under the dangerous offender category. The trial court indicated that the circumstances of the offense were aggravated because the Defendant fired a gun into a vehicle multiple times and then burned the car "along with the decedent in the car, which was totally against any normal behavioral norm of decent human beings." As to the second factor, the court also found that confinement for an extended period of time was necessary to protect society from the Defendant's unwillingness to lead a productive life and because these crimes were committed in furtherance of his "anti-societal lifestyle." The trial court elaborated that the Defendant has had a lengthy criminal history beginning at nineteen years old, which indicates a complete disregard for the law and that his actions leading up to his arrest and before are "the antithesis of what any normal human would behave in society."

From our review, we conclude that the trial court properly considered and weighed the necessary *Wilkerson* factors when imposing consecutive sentences. The trial court made appropriate findings supporting the conclusion that the Defendant's behavior indicated little or no regard for human life and that he had no hesitation about committing a crime in which the risk to human life was high. The court also appropriately considered the violent nature of the offenses and his social history in finding that the aggregate

32

sentence was reasonably related to the severity of the offenses and that extended confinement was necessary to protect the public from his further criminal conduct.

Pushing against this conclusion, the Defendant argues that any sentence beyond life without the possibility of parole can serve no purpose. We respectfully disagree. Although one rationale for consecutive sentencing is the protection of the public, this is not the only rationale in appropriate cases. This court has also recognized that imposing consecutive sentences "ensures that defendants committing separate and distinct violations of the law receive separate and distinct punishments. Otherwise defendants would escape the full impact of punishment for one of their offenses." *State v. Malone*, 928 S.W.2d 41, 44 (Tenn. Crim. App. 1995). Thus, in appropriate cases, this court "has upheld lengthy sentences that place a defendant's release eligibility far past the age of ordinary longevity." *Rivas*, 2021 WL 1625530, at *26 (affirming an effective sentence of life plus fifty-two years). Indeed, this court has affirmed consecutive sentences of life without the possibility of parole after observing that a defendant "should not escape the impact of consecutive sentencing merely because his crime was determined so heinous as to merit life without parole." *State v. Robinson*, 930 S.W.2d 78, 85 (Tenn. Crim. App. 1995); *see also State v. Watkins*, 648 S.W.3d 235, 276 (Tenn. Crim. App. 2021) (affirming an effective sentence of life plus twenty-seven years as being "appropriate for the offenses and to protect the public from the Defendant's future criminal conduct"); *State v. Howell*, 34 S.W.3d 484, 508 (Tenn. Crim. App. 2000) (affirming consecutive sentences of life without parole, noting that the supreme court has upheld terms of years when ordered consecutive to a death sentence and concluding that "[w]hen sentences beyond the death penalty are not a 'nullity,' it can hardly be argued that these are").

The same is true here. Given the severity of the offenses and the need to protect the public, we conclude that the effective sentence is not rendered unreasonable simply because it is beyond ordinary longevity. *See State v. Walls*, No. W2022-01379-CCA-R3-CD, 2024 WL 1796968, at *12 (Tenn. Crim. App. Apr. 25, 2024) (affirming an effective sentence of life plus fifteen years when the aggregate sentence was reasonably related to the severity of the offenses and extended confinement was necessary to protect the public from his further criminal conduct), *perm. app. denied* (Tenn. Sept. 12, 2024). The Defendant is not entitled to relief on this ground.

## III.   CORRECTION OF JUDGMENTS OF CONVICTION

Finally, the State notes that a clerical error exists in the judgments relating to Defendant Sheffield's offender classification.  Although the judgments of conviction identify the Defendant as a Range I, standard offender, it is clear that the trial court determined that he was a Range II, multiple offender, as we discussed above.  As such, the trial court is respectfully requested and ordered to correct Defendant Sheffield's judgments for Counts 2, 5, 6, 7, and 8 to reflect his offender classification as announced at sentencing.

We also order that the judgment for Count 8 be corrected to indicate that the sentence is aligned consecutively to Count 2, the underlying dangerous felony alleged in the indictment and proven at trial, instead of Count 1.  *See* Tenn. Code Ann. § 39-17-1324(e)(1).  In all other respects, the original judgments of conviction for his offenses shall remain as ordered by the trial court.

## CONCLUSION

In summary, we hold that the evidence was legally sufficient to support each conviction for both Defendants.  In addition, we hold that the trial court acted within its discretion when it denied Defendant Sheffield's motion to sever and that any failure to grant a requested limiting instruction was harmless beyond a reasonable doubt.  Finally, we hold that the trial court acted within its discretion in admitting photographs of the victim during the jury sentencing phase of the trial and in sentencing Defendant Sheffield for his non-homicide convictions.  Although we remand Defendant Sheffield's judgments for correction of clerical errors, we respectfully affirm the judgments of the trial court in all other respects.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE